**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 15-cv-2464-WJM-MJW

RONALD OLDHAM,
THOMAS ANDERSON,
EDWARD FISHER, JR.,
RICARDO PEÑA,
JON RAMIREZ
STEPHEN GENT, and
BRIAN ROLING,
on behalf of themselves and others similarly situated,

    Plaintiffs,

v.

MEGAN J. BRENNAN, Postmaster General, U.S. Postal Service,

    Defendant.

## ORDER GRANTING MOTION TO DISMISS

In this putative class action, Plaintiff Ronald Oldham ("Oldham") and other named Plaintiffs (together, "Plaintiffs"), employees of the U.S. Postal Service, bring claims of workplace age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.*, ("ADEA"), along with a related state law claim for breach of contract. (*See generally*, Plaintiff's First Amended Class Action Complaint ("Complaint") (ECF No. 33).)

Now before the Court is the Motion to Dismiss Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) & (b)(6), filed by Defendant (the Postmaster General). (ECF No. 34.) For the reasons set forth below, this motion is granted.

## I.  LEGAL STANDARD

A.	Rule 12(b)(1) – Lack of Jurisdiction

Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction generally take one of two forms.  A facial attack questions the sufficiency of the complaint as to its subject matter jurisdiction allegations.  *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).  In reviewing a facial attack, courts accept all well-pled allegations as true.  *Id*.

A factual attack, on the other hand, goes beyond the allegations in the complaint and challenges the facts on which subject matter jurisdiction is based.  *Id*. at 1003.  A factual attack does not permit the court to presume the complaint's factual allegations are true, although the court does have "wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)."  *Id*.  In such circumstances, the court's reference to evidence beyond the pleadings will not convert the motion to one under Rules 56 or 12(b)(6), unless the jurisdictional question is intertwined with the merits of the case.  *Id*.  "The jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case."  *Id*.

As analyzed below, the Court understands Defendant's challenge to jurisdiction in this case—particularly as to administrative exhaustion of Plaintiffs' proposed class claims—to be in the nature of a factual attack.

### B. Rule 12(b)(6) – Failure to State a Claim

Under Rule 12(b)(6), a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted." The Rule 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

In ruling on such a motion, the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id*. (quoting *Twombly*, 550 U.S. at 556).

## II. BACKGROUND

The following factual allegations are gathered from Plaintiff's Complaint' (ECF No. 33), and, as cited, from additional background documents filed by the parties, which either establish the facts relevant to the Court's determination of jurisdiction, and/or are documents that are referenced in Plaintiffs' Complaint and central to their claims.[1]

---

[1] *See Davis v. United States*, 343 F.3d 1282, 1296 (10th Cir. 2003) ("When a party challenges the allegations supporting subject-matter jurisdiction . . . a court's reference to evidence outside the pleadings does not convert the motion to dismiss to a Rule 56 motion for summary judgment." (citation and internal quotation marks omitted; alterations incorporated)); *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) (district court may take judicial notice of "facts which are a matter of public record" without converting a Rule 12(b)(6) motion into a motion for summary judgment); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

A.  **General Factual Background**

Plaintiffs are past and present employees of the U.S. Postal Service. (*Id.* ¶ 6.) Defendant, the Postmaster General, is the head of the U.S. Postal Service and Plaintiffs' employer within the meaning of the ADEA. (*Id.* ¶ 7.) Plaintiffs are all over 40 years old (*id.*), and have been employees of the Postal Service since at least March 2012 (*id.* ¶ 20). More specifically, Plaintiffs are drivers for the Postal Vehicle Service ("PVS"). (*Id.* ¶¶ 3, 5; ECF No. 34 at 2, ¶ 1.)

Plaintiffs and other PVS drivers are subject to a Collective Bargaining Agreement (the "CBA") between the Postal Service and the American Postal Workers Union, AFL-CIO ("APWU"). (*See* ECF No. 33 ¶¶ 23, 35; ECF No. 34 at 2, ¶ 2; ECF No. 34-1.)[2] The CBA recognizes Postal Support Employees ("PSEs"), a classification of non-career employees. (ECF No. 33 ¶ 16; ECF No. 34 at 2, ¶ 2; ECF No. 34-1 at 7.)[3]

B.  **Plaintiffs' Allegations**

Plaintiffs' age discrimination allegations relate to their own treatment relative to that of PSEs under the age of 40. (ECF No. 33 ¶ 16.) Plaintiffs and similarly-situated

---

[2] Excerpts of the CBA effective for the period November 21, 2010–May 20, 2015 are docketed at ECF No. 34-1. Defendant argues the Court may take judicial notice of the CBA as a Postal Service Regulation, *see* 39 C.F.R. § 21.2(a), and may consider it in deciding the motion to dismiss because it is central to Plaintiffs' claims and referenced in their Complaint. (*See* ECF No. 34 at 2 & n.3.) The Court can and does consider the CBA and other filed documents as background helpful in understanding and resolving Defendant's motion under Rule 12(b)(1). Although the terms of the CBA are not ultimately necessary to resolve the issues analyzed herein, the fact of its existence provides helpful factual background omitted from Plaintiffs' complaint. In particular, Plaintiffs' Complaint extensively references the PSE classification, without ever explaining the sources of that classification, including the CBA.

[3] All citations to docketed materials are to the page number in the ECF page header, which often differs from internal pagination, particularly in documents that contain prefatory materials such as tables of contents, or where only excerpted pages of a longer document have been filed, as is true with the CBA.

employees were hired before these younger PSEs. (*Id.* ¶ 17.) Plaintiffs allege that these PSEs have the same job duties or descriptions as the Plaintiffs, but receive a higher rate of pay than the Plaintiffs and others over age 40. (*Id.* ¶ 16.) Put another way, Plaintiffs allege they have the same qualifications, job duties, and job titles as the younger and more recently hired PSEs, but historically have been and/or continue to be paid less than the younger PSEs. (*Id*. ¶¶ 17–18, 31.)

Plaintiffs allege that Defendants "have a policy or practice of giving higher starting salaries to younger PSEs or temporary laborers which causes older employees to be discriminated against." (*Id.* ¶ 22.) They further allege that Defendant has "failed to pay Plaintiffs the same wages as younger, newly, or recently hired postal employees," despite requests by Plaintiffs and the APWU (*id.* ¶ 23); and, that Defendant has paid back wages due to employees under 40 when requested (Plaintiffs identify one such under-40 employee by name), but have not done so for Plaintiffs and other over-40 employees (*id.* ¶¶ 36–37).

Plaintiffs further allege (somewhat repetitively) that "[u]pon information and belief, the temporary employees or [PSEs] were younger workers under the age of forty (40) and have received increased wages because they are younger employees or more recent hires. (*Id.* ¶ 43.)

Plaintiffs seek to represent a class of all former and current PVS employees who were employed by the Postal Service between June 6, 2014 and the present, and who (a) are over age 40 at the time of alleged ADEA violations and (b) "were not given full pay as agreed upon in the [June 6, 2014 MOU (described below)]." (*Id.* ¶ 4.)

**C.     History of Plaintiffs' Claims**

In August 2014, the APWU pursued a class-action labor grievance. (*See* ECF No. 33 ¶¶ 58–60; ECF No. 34 at 2–3, ¶ 4; *see generally* ECF No. 34-2.) The grievance referred back to a Memorandum of Understanding entered between the Postal Service and the APWU (the "MOU") on June 6, 2014, which was itself an effort to resolve issues regarding pay and treatment of PSEs. (*See* ECF No. 33 ¶ 4; ECF No. 34-3; ECF No. 34 at 2, ¶ 3.) The MOU addressed pay for employees in the PSE classification, including terms applicable when PSEs are converted to career employee status. (ECF No. 34-2; ECF No. 34 at 2, ¶¶ 4–5.) The APWU's grievance alleged non-compliance with this MOU. In October 2014, the Postal Service APWU settled this grievance, including on behalf of the Plaintiffs here. As part of the settlement, the Postal Service agreed to process pay adjustments "in accordance with the MOU dated June 6, 2014." (ECF No. 34-3.) This was to have an effective date of July 12, 2014, and all of the named Plaintiffs here were included in the terms of this settlement. (*See id.*)

On or about May 8, 2015, Oldham filed an administrative complaint with the Postal Service, stating a discrimination claim no longer at issue in this lawsuit.[4] On or about June 23, 2015, he filed an additional administrative complaint. This second complaint stated that Oldham was claiming "class representation," and that he was seeking back pay and wages from 2012 to present, claiming "wages are lower than they

---

[4] Specifically, Oldham's first administrative complaint alleged that during a urine sample for drug testing on April 30, 2015, he had been watched by a female test observer, rather than a male observer. (ECF No. 34-5 at 1.) He sought "[t]o be compensated 350,000 dollars" for this alleged harassment. (*Id.* at 2.)

should be. They are not as high as other people['s] below us." (ECF No. 46-1 at 1; ECF No. 34-5 at 4–5.)

On August 4, 2015, the Postal Service consolidated Oldham's two complaints into one request for EEO counseling, stating this was being done "in accordance with 29 C.F.R. § 1614.606."[5] (ECF No. 34 at 4, ¶ 10; ECF No. 34-5 at 7–9.) In a letter to Oldham, the Postal Service explained that "all issues will be treated as one whole complaint" and would be processed under a single case number. (ECF No. 34-5 at 7.) This consolidation expressly included Oldham's allegation that "[o]n June 20, 2015, you became aware that you would not receive compensation or back pay equal to or greater than junior employees receiving a higher salary." (*Id.*) The August 4, 2015 letter also stated that Oldham's age discrimination claim "was previously raised and resolved through Memorandums [*sic*] of Understanding reached through the grievance procedure," including the June 6, 2014 MOU. (*Id.* at 8.) It described Oldham's "attemp[t] to challenge these MOU[s] through the EEO process" as "a collateral attack on the collective bargaining process." (*Id.*)

On August 9, 2015, Oldham filed an additional complaint, repeating both his prior allegations, including his claim that "[o]n June 20, 2015 [w]e became aware that we would not receive compensation or back pay equal to or greater than junior employees receiving a higher salary than us." (ECF No. 34-5 at 11.) In regards to both his June 23, 2015 and August 9, 2015 administrative complaints, Oldham was represented by

---

[5] This provision provides, in part, that "[t]wo or more complaints of discrimination filed by the same complainant shall be consolidated by the agency for joint processing." 29 C.F.R. § 1614.606.

the same attorney who represents Plaintiffs in this lawsuit.  (*See* ECF No. 34-5 at 6, 11.)  His August 9, 2015 administrative complaint did not repeat any statement regarding "class representation."

On August 28, 2015, the Postal Service (specifically, its National EEO Investigative Services Office) dismissed Oldham's complaint.  (*Id.* at 12–17.)  In its dismissal, the Postal Service found that Oldham was "attempting to modify the salary provisions set forth in the [CBA], most specifically, the [June 6, 2014] MOU."  (*Id.* at 15.)

This lawsuit followed.  Plaintiffs' initial Class Action Complaint (ECF No. 1) was filed on November 9, 2015, and Plaintiffs' First Amended Class Action Complaint (ECF No. 33) was filed on April 19, 2016.

### III.  ANALYSIS

**A.    Exhaustion (Class Claims)**

In general, "a federal employee must exhaust his or her administrative remedies in order to obtain *de novo* review of unlawful discrimination claims by a district court." *Coffman v. Glickman*, 328 F.3d 619, 623 (10th Cir. 2003).  "[A] plaintiff's exhaustion of his or her administrative remedies is a jurisdictional prerequisite to suit under the ADEA."  *Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005); *see also Woodman v. Runyon*, 132 F.3d 1330, 1341 (10th Cir. 1997) (Title VII action); *Gulley v. Orr*, 905 F.2d 1383, 1384 (10th Cir. 1990).

"[B]ecause failure to exhaust administrative remedies is a bar to subject matter jurisdiction, the burden is on the plaintiff as the party seeking federal jurisdiction to show, by competent evidence, that she did exhaust."  *McBride v. CITGO Petroleum*

*Corp.*, 281 F.3d 1099, 1106 (10th Cir. 2002) (ADA claims). Whether a plaintiff has exhausted his or her administrative remedies is a question of "jurisdictional fact." *Id.* at 1105.

In class actions, administrative exhaustion requires that before filing a class action lawsuit, the employee(s) must administratively file and exhaust a "class complaint." *See* 29 C.F.R. §§ 1614.204, 1614.407. A class complaint is defined by regulation as: "a written complaint of discrimination filed on behalf of a class by the agent of the class alleging that: (I) The class is so numerous that a consolidated complaint of the members of the class is impractical; (ii) There are questions of fact common to the class; (iii) The claims of the agent of the class are typical of the claims of the class; (iv) The agent of the class, or, if represented, the representative, will fairly and adequately protect the interests of the class." 29 C.F.R. § 1614.204(a)(2). A class complaint also "must be signed by the agent or representative and must identify the policy or practice adversely affecting the class as well as the specific action or matter affecting the class agent." *Id.* § 1614.204(c)(1). A class complaint that does not meet these prerequisites may be administratively dismissed. *Id.* § 1614.204(d)(2).

The filing of a class complaint triggers specific administrative processes including, for example, provisions to provide notice to all class members, *id.* § 1614.204(e), and for designating sub-classes where needed, *id.* § 1614.204(d)(6). *See generally Gulley*, 905 F.2d at 1384 (class administrative procedures "creat[e] a detailed scheme markedly different than the administrative mechanism for addressing individual discrimination claims"). The Tenth Circuit has therefore held that, "[i]n light of

the distinct administrative mechanism created specifically to address class claims of discrimination . . . exhaustion of individual administrative remedies is insufficient to commence a class action in federal court; rather, one of the named plaintiffs must have exhausted class administrative remedies." *Id.* at 1385. Thus, failure to exhaust class administrative remedies is a bar to filing class action claims in federal court. *Id.*

Here, Plaintiffs allege they exhausted their class claims through Oldham's individual complaints, as to which he received a formal dismissal. (ECF No. 33 ¶ 10; *see generally supra*, section II.C.) Defendant argues that Oldham's individual EEO complaints failed to exhaust class claims inasmuch as they did not identify a putative class, state numerosity or commonality, indicate that Oldham was acting as class agent, or otherwise meet the requirements of a class complaint. (*See* ECF No. 34 at 7.)

Plaintiffs respond that Oldham's June 28, 2015 administrative complaint stated that he was seeking "class representation" for his age discrimination complaint (ECF No. 46 at 3; ECF No. 34-5 at 4), and that his factual allegations were stated in the first person plural (*see, e.g.*, ECF No. 34-5 at 4 (alleging pay was "not as high as other people[] below *us*" (emphasis added)); *id.* at 11 ("On June 20, 2015 *we* became aware that *we* would not receive compensation . . . equal to or greater than junior employees receiving a higher salary than *us*" (emphasis added))).

Following authorities cited by Defendant, the Court concludes that Oldham's single reference to "class representation" in his penultimate administrative complaint, and his use of the terms "we" and "us" in his complaints failed to meet the explicit

requirements for a class complaint, *see* 29 C.F.R. § 1614.204(a)(2), and that his complaints were insufficient to exhaust Plaintiffs' administrative remedies as to their class claim(s).  *See Ransom v. U.S. Postal Service*, 170 F.App'x 525, 528 (10th Cir. 2006) (*pro se* plaintiff's "brief references . . . to the maltreatment of other employees did not qualify as a class complaint"; "any request for counseling pursuant to those claims was for individual counseling only and cannot satisfy the counseling requirement for the class claims"); *Woodward v. Salazar*, 731 F.Supp.2d 1178, 1190–91 (D.N.M. 2010) (following *Ransom*; brief references to treatment of other employees insufficient to exhaust class administrative remedies); *Bizzell v. Target Corp.*, 2007 WL 315358, at *2 (W.D. Okla. Jan. 31, 2007) (complaint lacking references to defendant's practices with respect to other employees was insufficient to put defendant on notice of the collective or class-wide nature of plaintiff's charge, or that he was seeking class-based relief); *Maiahy v. Target Corp.,* 2006 WL 2811899, at *2 (W.D. Okla. Sept. 28, 2006) (no administrative exhaustion of class claims where "plaintiff alleged that the defendant was setting up older employees," but "did not indicate that the charge was being brought on behalf of a class of employees or of others similarly situated or that he sought more than individual relief"; adequate notice of class claims requires that "the charge must . . . be 'sufficiently precise' to identify someone other than the individual plaintiff as the party complaining about an alleged policy of discrimination" (quoting *Foster v. Ruhrpumpen, Inc.*, 365 F.3d 1191, 1195–96 (10th Cir. 2004)).

   Plaintiffs do not cite countervailing authority.  They neither explain how Oldham's complaints arguably meet the explicit prerequisites for a class complaint, *see* 29 C.F.R.

§ 1614.204(a)(2), nor cite any authority authorizing the Court to overlook or excuse Oldham's failure to meet those express requirements. (*See generally* ECF No. 46 at 3–4.) Plaintiffs thus have not carried their burden of showing administrative exhaustion of their class claims. *See McBride*, 281 F.3d at 1106.

Plaintiffs instead argue that "the error lies with the Postal Service" for failing to process Oldham's complaints as class complaints. (ECF No. 46 at 3.) But, having concluded that Oldham's administrative complaints did not give the Postal Service sufficient notice that he was pursuing a class remedy, the Court will not fault Defendant for failing to treat his administrative complaints as a class complaint. In any event, it was or should have been obvious to Oldham that his complaints had not been treated as a class complaint no later than when the Postal Service dismissed his complaints on August 28, 2015, making no mention of any of the terms or procedures relevant to class treatment. (*See* ECF No. 34-5 at 12–17.) Plaintiffs point to no action taken thereafter to exhaust the administrative remedies for class treatment prior to filing suit. And, because Oldham was represented by counsel throughout this period of time, his failure to meet the requirements of a class complaint or to recognize that the Postal Service's dismissal addressed only individual claims cannot be forgiven under the rule of liberally construing the filings of *pro se* parties.

Finally, Plaintiffs argue that to the extent they have not already administratively exhausted their class claims, the Court should stay this case to allow Plaintiffs an additional 90 days to do so. (ECF No. 46 at 3.) Plaintiffs also claim they are now "in the process of refiling class complaints" and have attached an additional administrative complaint filed by Oldham. (*Id.*; ECF No. 46-3.) This new complaint is dated July 7,

2016, some nine months after the date Plaintiffs initiated this lawsuit and three months after they filed an Amended Complaint.  Plaintiffs have not further amended their Complaint since, and nothing in the docket or Plaintiffs' briefing reflects what, if anything, has happened with this subsequent complaint in the five months that have passed since it was filed.

In any event, the lack of administrative exhaustion is a jurisdictional defect with Plaintiffs' class claims.  *Shikles*, 426 F.3d at 1317; *Gulley*, 905 F.2d at 1385.  Having concluded that Plaintiffs' class claims were not administratively exhausted, the Court lacks authority to do anything other than to dismiss those claims.  *See Pueblo of Jemez v. United States*, 790 F.3d 1143, 1151 (10th Cir. 2015) ("A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking.").  The Court will not sanction a "sue first, exhaust later" procedure, which would be utterly contrary to the policy of requiring administrative exhaustion before a lawsuit may be filed.

**B.    Rule 12(b)(6) Analysis**

Having concluded that Plaintiffs failed to administratively exhaust their class claims, only individual claims remain subject to further review.  The Court resolves these claims based on Defendant's argument that Plaintiffs have failed to state a claim upon which relief can be granted.   Fed. R. Civ. P. 12(b)(6).

"To prove a prima facie case of age discrimination, a plaintiff must show: 1) she is a member of the class protected by the [ADEA]; 2) she suffered an adverse employment action; 3) she was qualified for the position at issue; and 4) she was

treated less favorably than others not in the protected class." *Jones v. Oklahoma City Pub. Sch.*, 617 F.3d 1273, 1279 (10th Cir. 2010) (internal quotation marks omitted); *see also, e.g., Greene v. Safeway Stores, Inc.*, 98 F.3d 554, 558 (10th Cir. 1996).

Plaintiffs also must show that their age was the "but-for" cause of Defendant's allegedly discriminatory actions. *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009) ("plaintiff retains the burden of persuasion to establish that age was the "but-for" cause of the employer's adverse action"); *Greene,* 98 F.3d at 557 ("To prevail on an ADEA claim a plaintiff must establish that age was a determining factor in the employer's challenged decision. The plaintiff need not prove that age was the sole reason for the employer's acts, but must show that age 'made the difference' in the employer's decision." (internal quotation marks and citations omitted)).

Here, the Plaintiffs have not adequately pled that their age was the "but-for" cause of Defendant's conduct. Plaintiffs' central allegation is that they were paid less than employees in the PSE category and that, at least frequently or in general, the PSEs were also younger than Plaintiffs. These allegations do not establish that age was a "but for" cause of the alleged discriminatory pay.

To the contrary, Plaintiffs' Complaint alleges that some combination of age, date of hire, and the employees' classification as career employees (rather than PSEs) led to discriminatory pay. For instance, Plaintiffs' complaint states that "Plaintiffs . . . were hired before recent PSEs and have historically gotten paid less than those PSEs hired from 2012 to the present date." (ECF No. 33 ¶ 17.) This allegation does not even mention age as a factor contributing to lesser pay, much less as a "but-for" cause. Likewise, Plaintiffs' Complaint alleges they have been under-paid in comparison to

14

"younger *and more recently hired* PSEs" (*id.* ¶ 18 (emphasis added)), and that higher starting salaries were given to "younger PSEs" (*id.* ¶ 22). These allegations, even taken as true, do not establish "but for" causation as to age, inasmuch as the claimed difference in pay could be attributable to age, to status as PSEs (as opposed to career employees), and/or to more recent hiring. From Plaintiffs' pleadings, it appears that "more recently hired" PSEs are paid more than Plaintiffs because of either their date of hire or their PSE classification, regardless of age. It may be that they are *also* younger, but that does not establish that age was the "but-for" cause of the claimed pay discrimination.

In fact, Plaintiffs' claims of alleged age discrimination are at times stated in disjunctive terms, for instance, pleading that "younger workers . . . have received increased wages because they are younger employees *or* more recent hires" (ECF No. 33 ¶ 43 (emphasis added)). This confirms that, even taking the well-pled factual allegations as true, Plaintiffs have not plausibly alleged that age was a "but-for" cause of any pay discrimination, since that pay discrimination, according to Plaintiffs' pleading, might be because of either age *or* date of hire and clearly, as to the latter, no actionable conduct on the part of the Defendant has been alleged.

In short, it appears that Plaintiffs are really contesting the pay policy for PSEs as compared to career employees, a matter addressed in the CBA and subsequent June 6, 2014 MOU. (*See* ECF No. 33 ¶ 4.) The gravamen of Plaintiffs' claim is that career employees are paid less well than PSEs, and that PSEs tend to be younger. However, Plaintiffs' status as career employees (rather than PSEs) is not a classification

protected by the ADEA. Regardless of whether the Postal Service is violating the MOU or the CBA, or whether its classifications lead to an unfair or discriminatory result in some generalized way, Plaintiffs have not plausibly plead the "but for" causation required to state an ADEA claim under controlling precedent, including *Gross* and *Greene*. Accordingly, the Court will also dismiss Plaintiff's individual ADEA claims under Rule 12(b)(6) for failure to plead a claim upon which relief can be granted.[6] Because Plaintiffs have already amended their Complaint once (*see* ECF Nos. 1, 30, 32, 33), and because it does not appear that amending the pleadings would correct the defect in Plaintiff's current Complaint, the Court will dismiss these claims with prejudice.

## C.     State Law Claims

Because the Court lacks jurisdiction over Plaintiffs' federal class claims, and will also dismiss Plaintiffs' individual federal claims under Rule 12(b)(6), Plaintiffs' state law breach of contract claim (see ECF No. 33 ¶¶ 50–61) will also be dismissed, pursuant to 28 U.S.C. § 1367(c)(3). *See Brooks v. Gaenzle*, 614 F.3d 1213, 1229 (10th Cir. 2010) (where federal claims are dismissed before trial, leaving only issues of state law, the federal court should ordinarily decline to exercise supplemental jurisdiction).

---

[6] In places, Plaintiffs' Complaint baldly states that the alleged discrimination was "because of" or "due to" age. (*See, e.g.,* ECF No. 33 ¶ 33 ("Upon information and belief, The Plaintiffs . . . received less wages . . . because of their age.").) These allegations are too conclusory to defeat Defendant's Motion to Dismiss. "A pleading that offers [only] 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting and citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

## IV.  CONCLUSION

For the reasons stated above, the Court ORDERS that Defendant's Motion to Dismiss Amended Complaint Pursuant to Rules 12(b)(1) and (b)(6) (ECF No. 34) is GRANTED as follows:

1. Plaintiffs' proposed ADEA class action claims (ECF No. 33 ¶¶ 11–49) are DISMISSED WITHOUT PREJUDICE for lack of jurisdiction;

2. Plaintiffs' individual claims for violation of the ADEA (ECF No. 33 ¶¶ 29–49) are DISMISSED WITH PREJUDICE pursuant to Rule 12(b)(6);

3. Plaintiffs' claim for breach of contract (ECF No. 33 ¶¶ 50–61) is DISMISSED WITHOUT PREJUDICE pursuant to 28 U.S.C. § 1367(c)(3).

4. The Clerk shall enter judgment accordingly and shall close this case.  The parties shall each bear their own attorneys' fees and costs.

Dated this 20th day of December, 2016.

BY THE COURT:

William J. Martinez
United States District Judge